*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* M. R. G. DELANO, Minor.

UNPUBLISHED
December 12, 2025
11:08 AM

No. 374688
Wayne Circuit Court
Juvenile Division
LC No. 2021-00476-NA

Before: TREBILCOCK, P.J., and PATEL and WALLACE, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating his parental rights to the minor child, MRGD, under MCL 712A.19b(3)(a)(*ii*) (desertion of child for 91 or more days), (g) (failure to provide proper care or custody), (h) (parental imprisonment depriving the child of a normal home for more than two years), and (j) (reasonable likelihood of harm if returned to parent).[1] On appeal, respondent challenges only the trial court's best-interest findings. We affirm.

## I. BACKGROUND

Respondent is the legal father of MRGD, who was born in June 2017. In September 2017, respondent was convicted of assault with intent to commit sexual penetration, MCL 750.529. In October 2017, he was sentenced as a third-offense habitual offender, MCL 769.11, to 3 to 25 years' imprisonment. Additionally, in 2012, respondent had his parental rights terminated to MRGD's half-sibling, HT, because he had been incarcerated for the majority of the child's life and was unable to provide her with the proper care and custody.

---

[1] The petition also named the children's mother as a respondent and requested termination of her parental rights to MRGD. The mother's rights were terminated, but she is not a party to this appeal. Accordingly, "respondent" refers to respondent-father only and respondent-mother is referred to as "the mother."

In April 2021, Children's Protective Services investigated allegations that MRGD's mother failed to protect the child from sexual abuse by two men. In June 2021, petitioner filed a petition requesting the trial court take jurisdiction of MRGD under MCL 712A.2(b)(1) and (2), remove the child from the mother's care, and terminate respondent's parental rights. The petition alleged respondent was currently incarcerated and had not visited MRGD or provided any financial support since 2017. The trial court authorized the petition and placed MRGD with petitioner for care and supervision.

At the adjudication, respondent acknowledged that he had not seen MRGD in person since her birth, but contended that he talked to her on the phone "every Monday[]" and sent her letters. Respondent asserted he and MRGD developed a bond through these calls, and she knew he was her father. He claimed he "was approved for video visits[,]" but those visits never happened. Respondent admitted that he was not currently able to provide for MRGD. He maintained that he offered to send money that he earned in prison to MRGD's foster parents, but they declined the money. Respondent explained that he planned on staying at a halfway house for about six months after his release from prison. Respondent also testified that his parental rights were terminated to HT in 2012 while he was incarcerated for a home-invasion conviction.

The trial court determined that jurisdiction was supported by a preponderance of the evidence under MCL 712A.2(b)(1) and (2). Proceeding immediately to the dispositional phase, the trial court found that there was clear and convincing evidence to support termination of respondent's parental rights to MRGD under MCL 712A.19b(3)(a)(*ii*), (g), (h), and (j).

A best-interests hearing was held in January 2025. Respondent testified that he had returned to prison approximately a year earlier for a tether violation following his release on parole for his conviction of assault with intent to commit sexual penetration. Respondent asserted that he would be paroled and released from prison in April 2025. Respondent acknowledged that, except for the six-month period that he was out on parole, he had been incarcerated for MRGD's entire life and had never seen her in person. However, he asserted that the child would recognize him through pictures. Respondent claimed that he tried to set up visits with MRGD during the six months that he was out on parole, but was unable to do so.[2] Respondent also did not send MRGD any money while he was out on parole. Respondent maintained that he and MRGD were bonded and loved each other.

Brittney Lewan, MRGD's foster care supervisor, testified that the foster parents were meeting the child's needs. According to the foster parents, MRGD was progressing emotionally and academically, and MRGD wanted to stay in her foster home. Lewan opined that respondent could not properly care for MRGD, and would not be able to within a reasonable time because of his incarceration. Lewan testified that respondent had approximately 20 to 30 phone calls with MRGD while he was incarcerated, and acknowledged that the content of those calls was "appropriate." However, respondent "lost his phone privileges for a great deal of time[,]" and

---

[2] Respondent stated his parole officer "had to approve" the visits. The record is unclear as to whether his parole officer denied the visits, or whether he did not visit MRGD for other reasons.

when this happened, MRGD "didn't report any desire for the phone calls to be reinstated." Lewan testified that MRGD referred to respondent by his first name and called her foster father "[d]ad."

The trial court concluded that a preponderance of the evidence supported that termination of respondent's parental rights to MRGD was in the child's best interests. The trial court found that respondent had no bond with MRGD, stating that he was incarcerated for 90% of her life and failed to make any efforts to visit her during the short period of time that he was out of prison. The trial court determined that respondent was not able to parent MRGD because of his regular incarceration and it was not likely that MRGD could be returned to respondent's home within the foreseeable future. The trial court noted that MRGD was "doing very well" in foster care, and there was a "strong possibility" her foster parents would adopt her. Recognizing MRGD's need for permanency, stability, and finality, the trial court concluded that it was in her best interests to terminate respondent's parental rights. Respondent now appeals.

## II. BEST INTERESTS

In his sole issue on appeal, respondent argues the trial court erroneously terminated his parental rights, because termination was not in MRGD's best interests. We disagree.

We review a trial court's decision that termination is in a child's best interests for clear error. *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021) (cleaned up). "To be clearly erroneous, a decision must be more than maybe or probably wrong." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011). "We give deference to the trial court's special opportunity to judge the credibility of the witnesses." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).

As stated above, the trial court found statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(a)(*ii*), (3)(g), (3)(h), and (3)(j). Respondent does not challenge the sufficiency of those grounds on appeal, the failure to provide reasonable efforts for reunification, or the issues regarding his incarcerated status.

"If a trial court finds that a statutory basis for terminating parental rights exists by clear and convincing evidence, it is required to terminate parental rights if it finds from a preponderance of evidence on the whole record that termination is in the child[]'s best interests." *In re Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 637; 853 NW2d 459 (2014) (cleaned up); see also MCL 712A.19b(5). The focus of the best-interest determination is on the child, not the parent. *In re Moss*, 301 Mich App 76, 88; 836 NW2d 182 (2013). "[A]t the best-interest stage, the child's interest in a normal family home is superior to any interest the parent has." *Id*. at 89.

"The trial court should weigh all the evidence available to determine the child[]'s best interests," and it should consider a variety of factors, including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014) (cleaned up). Other relevant factors include "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history

-3-

with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714. Other considerations include the length of time the child was in foster care or placed with relatives, whether it is likely that a child could be returned to the parent's home "within the foreseeable future, if at all[,]" and whether the parent can provide a permanent, safe, and stable home. *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012).

Respondent argues that termination was not in MRGD's best interests because respondent loved the child, attempted to maintain contact with regular phone visits, sought services for reunification, and was expected to be released from prison within a few months of the best-interests hearing. A preponderance of the evidence supports that respondent has been incarcerated for the majority of MRGD's life, has never met her in person, and has not established a bond with her. During the short time that respondent was out of prison on parole, he did not visit MRGD. Although incarceration alone does not constitute grounds for termination, *In re Mason*, 486 Mich 142, 160; 782 NW2d 747 (2010), the length of a parent's incarceration is a permissible consideration in determining a minor child's best interests, *In re Jenks*, 281 Mich App 514, 519; 760 NW2d 297 (2008). The trial court determined that MRGD's need for permanence and stability outweighed the limited bond that may have existed with respondent. MRGD cannot wait in limbo for positive changes to potentially manifest when respondent is released from prison, which, at the time of the best-interests hearing, was to be in April 2025 at the earliest. We are not left with a definite and firm conviction that the trial court made a mistake by finding that termination of respondent's parental rights was in the best interests of MRGD.

Affirmed.

/s/ Christopher M. Trebilcock
/s/ Sima G. Patel
/s/ Randy J. Wallace

-4-